IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| S&S WORLDWIDE, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>WELLS FARGO BANK, et al.,<br><br>    Defendants. | Case No. 20-cv-01926-MMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DISMISSING COMPLAINT WITH LEAVE TO AMEND; CONTINUING CASE MANAGEMENT CONFERENCE** |

Before the Court is defendant Wells Fargo Bank, N.A's ("WFB") Motion to Dismiss, filed March 25, 2020.[1] Plaintiff S&S Worldwide, Inc. ("S&S") has filed opposition, to which WFB has replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[2]

**BACKGROUND**

For purposes of the instant motion, the Court assumes the following factual allegations in S&S's complaint are true.

On October 17, 2016, Ronald L. Kuntz ("Kuntz") opened a "Business Account" with WFB, "which[,] according to the application, was for a construction company with annual gross sales of . . . $100,000 and no international transactions information [was] listed in the appropriate documentation area." (See Compl. ¶ 13.) Over the next year, he "maintained an average monthly balance of approximately $908.44" (see Compl. ¶ 14); during that period, his largest deposit, other than a check in the amount of

---

[1] A second defendant, Wells Fargo & Company ("WFC"), did not join in the motion to dismiss and has not otherwise responded to the complaint.

[2] By order June 11, 2020, the Court took the matter under submission.

$37,293.62 that "bounced," was a deposit of $2120, and his largest withdrawal was for $2000 (see Compl. ¶ 15).

"In the fall of 2017, an email chain between S&S and one of its vendors about a payment for goods was intercepted by unknown hacker(s)," who, "by posing as the vendor and changing one letter in the email address, directed S&S to make the payment to an account." (See Compl. ¶ 20.) Relying on said email, S&S, on October 20, 2017, wired "approximately $1.3 million" (hereinafter, "Initial Wire") to that account number, which "turned out not to be associated with the vendor," but, rather, with the account maintained by Kuntz at WFB. (See Compl. ¶¶ 20-21.)

"While the Initial Wire was not transmitted from S&S's customer account at WFB, S&S was . . . a long-standing customer of WFC, WFB and various other affiliates and subsidiaries" (see Compl. ¶ 55),[3] from which relationship WFB had obtained a "substantial understanding of S&S's business and personnel" (see Compl. ¶ 65).

During the two-week period after the Initial Wire, Kuntz "went to three different [WFB] branches and initiated six wire transfers for hundreds of thousands of dollars each, entirely liquidating the funds transferred in the Initial Wire." (See Compl. ¶ 28.) First, on October 23, 2017, Kuntz transferred $357,000 to the account of "Brogsek Logistics in Houston, Texas at ZB NA DBA Amegy Bank." (See Compl. ¶ 34). Next, on October 27, 2017, Kuntz transferred $395,700 to the account of "Siriya Logistics in Houston, Texas through Bank of America, N.A. located in New York, NY." (See Compl. ¶ 35.) Several days later, on October 30, 2017, Kuntz transferred $200,000 to the account of "Kong Kimseng in Phnom Penh, Cambodia through Mayback (Cambodia) PLC in Phnom Penh City, Cambodia" (see Compl. ¶ 36), and another $200,000 to the account of "Kong Vechet in Phnom Penh City, Cambodia through ABA Bank in Phnom Penh" (see Compl.

---

[3] Specifically, S&S alleges that it "maintained business bank accounts" with WFB from 2011 to 2018 (see Compl. ¶ 57), that "all of S&S's corporate credit cards were through and serviced by [WFB]" (see Compl. ¶ 58), and that "Wells Fargo Advisors," a "subsidiary" and "affiliate" of, respectively, WFC and WFB, is the "third party administrator for S&S's corporate employee 401k plan" (see Compl. ¶¶ 59-60).

¶ 38), "despite that the wire transfers were to Cambodia which is listed by the U.S. Department of State as a Jurisdiction of Primary Concern among known laundering countries" (see Compl. ¶ 45).

At some point, "while over $1 million remained in [the] [a]ccount, or no later than before the wire transfers to Cambodia," Kuntz was "detained and questioned by WFB" (see Compl. ¶¶ 42-43), at which time, the "branch banker and manager of the branch . . . determined that [the] [a]ccount and Kuntz were involved with and/or participating in an illegitimate and fraudulent scheme" and the branch manager "suggested freezing [the] [a]ccount or taking other preventive measures" (see Compl. ¶ 43), "but WFB did not" do so (see id.).

WFB thereafter "allowed Kuntz to continue liquidating his account through . . . wire transfers, including two wires [in early] November . . . , one for $35,100 to a fictitious business account at a bank in New Orleans in which the wire transfer instructions were incomplete and one for $80,000 to a fictitious business entity at a bank in New York." (See Compl. ¶ 47). Specifically, on November 1, 2017, Kuntz transferred $80,000 to the account of "Ludenex Supplies with no location provided through Capital One, N.A. in New York, NY" (see Compl. ¶ 40), after which, on November 3, 2017, Kuntz transferred $35,100 to the account of "Ludenex Supplies with no location provided through Capital One, N.A. in New Orleans, LA" (see Compl. ¶ 41).

Subsequent to the above transfers, S&S, on November 6, 2017, was "notified by the vendor that payment still had not been received," whereupon S&S "immediately notified WFB" (see Compl. ¶ 49), and requested it "assist [S&S] in freezing Kuntz's account and seeking to recall the wire transfers" (see Compl. ¶ 50). "WFB, however, refused to help S&S until S&S agreed to release WFB from liability for its conduct," which S&S "refused" to do. (See Compl. ¶¶ 51-52.)

Based on the above allegations, S&S asserts the following six state law Causes of Action: "Negligence"; "Breach of Contract and/or Covenant of Good Faith and Fair Dealing"; "Aiding and Abetting Conversion"; "Aiding and Abetting Fraud"; "Unjust

3

Enrichment/ Constructive Trust"; and "Violation of California Business & Professions Code Section 17200 et seq."

**LEGAL STANDARD**

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." See id. Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." See id. (internal quotation, citation, and alteration omitted).

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint and construe them in the light most favorable to the nonmoving party. See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). "To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" Twombly, 550 U.S. at 555. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." See Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

**DISCUSSION**

At the outset, the Court addresses the parties' dispute as to the law applicable to S&S's claims. WFB argues each of S&S's claims is subject to dismissal under California law, and, in response, S&S states it "disagrees that California law applies to all the claims." (See Pl.'s Opp. at 13:7-11.)

4

Where, as here, a federal court has diversity jurisdiction,[4] the court "must" apply the "conflict of laws rules" of the forum state. See Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941). Under California law, where two states have "differing laws governing the issue presented," the court applies California law "unless a party litigant timely invokes the law of a foreign state," in which case such party "must demonstrate that the latter rule of decision will further the interest of the foreign state and therefore that it is an appropriate one for the forum to apply to the case before it." See Bernhard v. Harrah's Club, 16 Cal. 3d 313, 317-18 (1976) (internal quotation and citation omitted). Consequently, contrary to S&S's argument, it is not WFB's burden to demonstrate California law applies, but, rather, S&S's burden to show the law of some other state does. See id. S&S, however, has not shown a conflict exists between the law of California and the law of some other state, let alone that the law of such other state should apply.

Accordingly, the Court will apply California law.

**A. All Claims: Displacement**

WFB contends each of S&S's claims is displaced by division 11 of the California Commercial Code, see Cal. Com. Code §§ 11101-11507, which adopts Article 4A of the Uniform Commercial Code, see Zengen, Inc. v. Comerica Bank, 41 Cal. 4th 239, 252-54 (2007) (using "division 11" and "Article 4A" interchangeably); see also id. at 243 n.1 (explaining division 11 is "identical to Article 4A of the Uniform Commercial Code").

Division 11 "applies to 'funds transfers defined in Section 11104.'" See id. at 248 (quoting Cal. Com. Code § 11102). Section 11104, in turn, provides as follows:

> 'Funds transfer' means the series of transactions, beginning with the originator's payment order, made for the purpose of making payment to the beneficiary of the order. The term includes any payment order issued by the

---

[4] At a telephonic conference conducted December 16, 2020, the parties confirmed they are diverse in citizenship. Specifically, S&S, through its counsel, confirmed it is incorporated, and has its principal place of business, in Utah, and defendants, through their counsel, confirmed WFB, a national bank, is a citizen of South Dakota only, and that WFC is incorporated in Delaware and has its principal place of business in California.

5

originator's bank or an intermediary bank intended to carry out the originator's payment order.  A funds transfer is completed by acceptance by the beneficiary's bank of a payment order for the benefit of the beneficiary of the originator's payment order.

See Cal. Com. Code § 11104(a).[5]

As explained by the California Supreme Court, Article 4A, i.e., division 11, displaces "common law causes of action based on allegedly unauthorized funds transfers" in "two specific areas:  (1) where the common law claims would create rights, duties, or liabilities inconsistent with division 11; and (2) where the circumstances giving rise to the common law claims are specifically covered by the provisions of division 11." See Zengen, 41 Cal. 4th at 253.

In seeking dismissal, WFB relies on the second of the above two situations.  In particular, WFB relies on § 11207, which section addresses the rights and responsibilities of an originator and a beneficiary's bank where "a payment order received by the beneficiary's bank identifies the beneficiary both by name and by an identifying or bank account number and the name and number identify different persons."  See Cal. Com. Code § 11207(b).  Under § 11207(b), if the beneficiary's bank "does not know that the name and number refer to different persons, it may rely on the number."  See Cal. Com. Code § 11207(b)(1).  By contrast, if the beneficiary's bank "knows that the name and number identify different persons" and the person paid by the bank was not "entitled to receive payment from the originator," then "acceptance of the order cannot occur," see Cal. Com. Code § 11207(b)(2), meaning the beneficiary's bank "takes the loss" and the originator is "excused from its obligation to pay," see Cal. Com. Code § 11207, Comment ¶ 2),

Here, as set forth above, S&S alleges that, while intending to pay a specific

---

[5] The "originator" is "the sender of the first payment order in a funds transfer," see Cal. Com. Code § 11104(a), the "beneficiary's bank" is the "bank identified in a payment order in which an account of the beneficiary is to be credited," see Cal. Com. Code § 11103(a)(3), and the "beneficiary" is "the person to be paid by the beneficiary's bank," see Cal. Com. Code § 11103(a)(2).

6

"vendor,"[6] a "hacker" posing as the vendor tricked S&S into transmitting by wire "approximately $1.3 million" to a WFB account that "turned out not to be associated with the vendor." (See Compl. ¶ 20-22.) In other words, in the "wire transfer instructions" provided by S&S to WFB (see Compl. ¶ 106), the name of the vendor and the name on the account number to which S&S requested the funds be transferred did not match. As § 11207(b) answers the question of who bears the loss in such a situation, S&S's claims, to the extent based on WFB's having processed the Initial Wire and deposited S&S's funds into an account bearing the number provided by S&S, are displaced by division 11. See Zengen, 41 Cal. 4th at 255 (holding common law claims were "displaced by Article 4A" where division 11 "cover[ed] [the] subject matter").

Although, as noted, WFB contends all of S&S's claims are displaced, the "exclusivity of Article 4-A" is "restricted to . . . situation[s] covered by [its] particular provisions." See id. at 254 (internal quotation and citation omitted). Here, as S&S points out, its claims are not based solely on WFB's having processed the Initial Wire. Specifically, S&S's claims are based on the following additional alleged acts or omissions of WFB: (1) allowing Kuntz, prior to the Initial Wire, to open and maintain the account (see, e.g., Compl. ¶¶ 13, 18-19, 25, 67-70); (2) allowing Kuntz, after the Initial Wire, to transfer the subject funds to other banks (see, e.g., Compl. ¶¶ 2, 16, 28, 30-32, 45); and (3) not assisting S&S when, after a number of such transfers, S&S asked WFB to freeze Kuntz's account and attempt to recall the transferred funds (see, e.g., Compl. ¶¶ 3, 49-53).

WFB has not identified any provision in Article 4A that covers any of the alleged acts or omissions on which such additional claims are based, and the Court finds such additional claims are not displaced by Article 4A. See, e.g., Eisenberg v. Wachovia Bank, N.A., 301 F.3d 220, 222-24 (4th Cir. 2002) (holding, where bank customer tricked plaintiff into wiring funds to customer's account, claim that bank negligently allowed

---

[6] The vendor is not named in the complaint.

customer to "open and operate" account not displaced by Article 4A); Venture General Agency, LLC v. Wells Fargo Bank, N.A., 2019 WL 3503109, at *3-4 (N.D. Cal. August 1, 2019) (holding claim not displaced where plaintiff alleged bank customer tricked plaintiff into wiring funds to customer's account and, after transfer, bank refused to assist plaintiff in plaintiff's efforts to recover its funds).

Accordingly, to the extent S&S's claims are based on WFB's having processed the Initial Wire, the claims are displaced by Article 4A and thus subject to dismissal, and, to the extent S&S's claims are based on other acts or omissions, the Court next considers WFB's additional arguments in support of dismissal.

**B. First Cause of Action:  Negligence**

In the First Cause of Action, S&S alleges WFB was negligent, in that it failed "to take reasonable steps to prevent [S&S] from suffering foreseeable harm" (see Compl. ¶ 83), failed "to investigate [Kuntz's] transfers and take reasonable measures to prevent them" (see Compl. ¶ 96), failed "to report the suspicious activity" by Kuntz (see Compl. ¶ 97), failed "to reasonably and diligently conduct the investigation" (see Compl. ¶ 98), "process[ed] [Kuntz's] wire transfers that were incomplete or otherwise deficient" (see Compl. ¶ 99), and failed "to take reasonable measures to assist S&S" (see Compl. ¶ 100).  WFB argues it did not owe S&S a duty to perform any of the above-referenced acts.

At the outset, WFB relies on California cases holding "a bank owes no duty to nondepositors to investigate or disclose suspicious activities on the part of an account holder."  See Casey v. U.S. Bank Nat'l Association, 127 Cal. App. 4th 1138, 1149 (2005) (citing cases).  Here, S&S argues, the general principle is, for several reasons, not applicable to its negligence claim.  As set forth below, the Court disagrees.

S&S first argues a duty to investigate Kuntz and/or assist S&S exists by reason of S&S's having accounts with WFB and one of its affiliates (see Compl. ¶¶ 57-60); in other words, S&S essentially contends it is a depositor.  Although a bank "has a duty to act with reasonable care in its transactions with its depositors," see Chazen v. Centennial Bank,

61 Cal. App. 4th 532, 543 (1998) (internal quotation and citation omitted), S&S acknowledges the "Initial Wire was not transmitted from" an account it held at WFB (see Compl. ¶ 55). Consequently, for purposes of the instant transactions, S&S was not a depositor. Further, even assuming S&S's unrelated accounts suffice to make S&S a depositor, a bank's duty to act with reasonable care "is an implied term in the contract between the bank and its depositor," see Chazen, 61 Cal. App. 4th at 543, and "case law reflects the narrow scope of a bank's duties under the deposit agreement," namely a duty "to honor checks properly payable from the depositor's account," a duty "to dishonor checks lacking required signatures," and a duty "to render faithful and accurate accounts under the contract of deposit," see Kurtz-Ahlers, LLC v. Bank of America, N.A., 48 Cal. App. 5th 952, 956 (2020) (internal citations and emphasis omitted). S&S has not cited, and the Court has not found, any case extending that list to include "a duty to investigate and disclose possible fraudulent activity in another depositor's account." See id. at 956.

Next, citing Sun 'n Sand, Inc. v. United California Bank, 21 Cal. 3d 671 (1978), S&S argues that, if it is considered a non-depositor, WFB nonetheless owed it a duty of care. The duty recognized in Sun 'n Sand, however, "is narrowly circumscribed," in that "it is activated only when checks, not insignificant in amount, are drawn payable to the order of a bank and are presented to the payee bank by a third party seeking to negotiate the checks for his own benefit." See Kurtz-Ahlers, 48 Cal. App. 5th at 958 (quoting Sun 'n Sand, 21 Cal. 3d at 695-96).

S&S next argues WFB had a duty to assist S&S after S&S brought its concerns about the Initial Wire to WFB's attention, relying on the principle that, although generally a "person who has not created a peril is not liable in tort merely for failure to take affirmative action to assist or protect another," such person can be held liable where the defendant engages in a "voluntary assumption of a duty upon which a person reasonably relies." See Seo v. All-Makes Overhead Doors, 97 Cal. App. 4th 1193, 1203 (2002). According to S&S, WFB assumed a duty to S&S, "on which [acts] S&S relied," when WFB "agreed" to "assist in freezing the account and recalling the wires" and by "assisting

in one or more recalls," before it "demanded a release prior to further assistance." (See Pl.'s Opp. at 18:13-16). The complaint, however, includes no such factual allegations, either as to an unconditional agreement or S&S's reliance thereon, let alone the nature of any such reliance. Rather, as noted, the complaint alleges S&S requested assistance and WFB "refused to help S&S until S&S agreed to release WFB from liability," a condition to which "S&S refused to acquiesce." (See Compl. ¶¶ 50-52; see also Compl. ¶ 53 (alleging, "[a]s a result of WFB's refusal to assist S&S, S&S was unable to recover most of the wires that Kuntz had initiated through WFB").)

Next, S&S relies on § 669 of the California Evidence Code, which provides that a "failure of a person to exercise due care is presumed" where the person "violated a statute, ordinance, or regulation of a public entity," see Cal. Evid. Code § 669(a)(1), and the "violation proximately caused . . . injury to person or property," see Cal. Evid. Code § 669(a)(2). Section 669, however, does not itself create a duty of care; rather, it "concerns the *standard* of care." See California Service Station & Automobile Repair Ass'n v. American Home Assurance Co., 62 Cal. App. 4th 1166, 1177-80 (1998) (emphasis in original) (holding "an underlying claim of ordinary negligence must be viable before the presumption . . . can be employed"). Here, as discussed above, S&S fails to plead facts sufficient to demonstrate an "independent duty of care," see id. at 1180, and, as discussed below, S&S further fails to identify a "statute, ordinance, or regulation," see Cal. Evid. Code § 669(a)(1), under which any such duty is owed.

Although, in its complaint, S&S appears to rely on the Bank Secrecy Act ("BSA") and "banking" regulations promulgated thereunder (see, e.g., Compl. ¶¶ 85-90), the complaint does not identify which section of the BSA or what regulation(s) WFB violated, and, indeed, alleges WFB did comply with the BSA's requirement that it "review, collect, and retain all incoming wire transfer payment order information for transfers in excess of $3,000." (See Compl. ¶ 29). Moreover, as WFB points out, § 669 does not apply unless the plaintiff "was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted." See Cal. Evid. Code § 669(a)(4). Here, S&S has not shown

it is within the class of persons for whose protection the BSA was adopted, and courts that have considered the issue have found the BSA was enacted for the protection of the government. See, e.g., Marlin v. Moody Nat'l Bank, 2006 WL 2382325, at *7 (S.D. Tex. August 16, 2006) (holding, where plaintiff argued BSA imposes duty on banks to "investigate, prevent money laundering, and report suspicious activity," any such "obligation under that statute is to the government rather than some remote victim").

Lastly, S&S argues it need not rely on the BSA for § 669's presumption to apply, because WFB has admitted that it "fraudulently open[ed] bank accounts on behalf of existing or new customers in order to garner excess profits through a variety of fees charged to and costs imposed on these accounts." (See Compl. ¶ 67; see also Pl.'s Opp. at 20:25-21:9.) S&S's reliance on such theory, however, is unavailing, as the complaint fails to identify the statute, ordinance, or regulation violated by such scheme, let alone include any facts to support a finding that Kuntz's account was fraudulently opened by WFB. (See Compl. ¶ 13 (alleging account was opened by Kuntz).)

Accordingly, the First Cause of Action is subject to dismissal.

**C. Second Cause of Action: "Breach of Contract and/or Covenant of Good Faith and Fair Dealing"**

In the Second Cause of Action, in which S&S asserts a claim for breach of contract and breach of the implied covenant of good faith and fair dealing, S&S alleges WFB "had a contract with S&S and with Kuntz and/or one or more entities purportedly owned or operated by him" (see Compl. ¶ 105) and that WFB "breached the terms of and/or the covenant of good faith and fair dealing implied within the foregoing contracts" (see Compl. ¶ 107). WFB argues S&S has failed to identify a breach of any such contract.

"To prevail on a cause of action for breach of contract, the plaintiff must prove (1) the contract, (2) the plaintiff's performance of the contract or excuse for nonperformance, (3) the defendant's breach, and (4) the resulting damage to the plaintiff." See Richman v. Hartley, 224 Cal. App. 4th 1182, 1186 (2014). Where the

11

1  plaintiff seeks relief as a third-party beneficiary, the plaintiff must show the parties to the
2  contract "intended to benefit the third party and the terms of the contract make that intent
3  evident." See Balsam v. Tucows Inc., 627 F.3d 1158, 1161 (9th Cir. 2010) (applying
4  California law).

5      The complaint contains no facts to support a finding that there exists a contract
6  between WFB and S&S in which WFB expressly or implicitly promised to investigate
7  suspicious activity by its customers or to assist S&S in the event S&S believed it was the
8  victim of a fraud perpetrated by a WFB customer.  Nor does the complaint include any
9  facts to support a finding that there exists, whether expressly or implicitly, a provision in
10 the deposit agreement, or other agreement, between WFB and Kuntz, or between WFB
11 and any entity Kuntz owned or operated, that is intended to benefit S&S.

12     Accordingly, the Second Cause of Action is subject to dismissal.

13 **D.  Third Cause of Action: "Aiding and Abetting Conversion"**

14     In the Third Cause of Action, titled "Aiding and Abetting Conversion," S&S alleges
15 WFB "knew that Kuntz and the [h]acker . . . wrongfully interfered with S&S's right to the
16 money by wire transferring S&S's money to third party accounts, both domestically and
17 overseas in bank secrecy havens" and "substantially assisted Kuntz and the [h]acker in
18 [their] conversion of S&S's funds by approving and conducting the wire transfers."  (See
19 Compl. ¶¶ 112-13.)

20     Under California law, a defendant can be held liable for aiding and abetting
21 another's intentional tort, where the defendant "had actual knowledge of the specific
22 primary wrong and substantially assisted."  See Casey, 127 Cal. App. 4th at 1145.  WFB
23 argues the complaint lacks sufficient facts to support S&S's conclusory allegation that it
24 had actual knowledge of the primary wrong, i.e., Kuntz's scheme to convert S&S's
25 money.

26     Although, as S&S points out, "knowledge" may be "alleged generally," see Fed. R.
27 Civ. P. 9(b), a plaintiff may not merely allege that a defendant "knew" of some specified
28 circumstance, see Iqbal, 556 U.S. at 680-81 (holding allegation defendant "knew" plaintiff

would be subjected by others to "harsh conditions of confinement" was "conclusory and not entitled to be assumed true"). Here, unlike the cases on which S&S relies,[7] the complaint lacks sufficient facts to support the conclusory assertion that WFB, at any time at which funds remained in the account or could be recovered, had actual knowledge of Kuntz's scheme to convert S&S funds. Rather, by alleging a WFB branch manager "determined [the] [a]ccount and Kuntz were involved with and/or participating in an illegitimate and fraudulent scheme" (see Compl. ¶ 43), S&S essentially alleges WFB knew "*something* fishy was going on with the account[ ]." See Casey, 127 Cal. App. 4th at 1149 (emphasis in original). By such allegation, however, S&S has not alleged the requisite "actual knowledge of the specific [wrongdoing] for which it seeks to hold [WFB] liable," see id. at 1152 (holding "general allegation that banks knew the [account holders] were involved in 'wrongful or illegal conduct'" not sufficient to plead "actual knowledge [account holders] were *misappropriating funds* from [plaintiff]") (emphasis in original).

Accordingly, the Third Cause of Action is subject to dismissal.

### E. Fourth Cause of Action: "Aiding and Abetting Fraud"

In the Fourth Cause of Action, titled "Aiding and Abetting Fraud," S&S alleges "Kuntz and the [h]acker" fraudulently induced S&S to transfer funds intended for S&S's vendor to an account owned by Kuntz (see Compl. ¶ 116), and that WFB "knew that rather than use the money to pay the vendor, Kuntz and the [h]acker wire transferred the money to third party accounts, both domestically and overseas accounts in bank secrecy havens" (see Compl. ¶ 119).

WFB argues the complaint lacks sufficient facts to support a finding that WFB had actual knowledge of the "primary wrong." See Casey, 127 Cal. App. 4th at 1145. The Court agrees.

---

[7] In Evans v. ZB, N.A., 779 Fed. Appx. 443 (9th Cir. 2019), for example, the Ninth Circuit held the plaintiff therein had sufficiently alleged facts to support a finding that the bank "knew" its account holder was engaged in a Ponzi scheme, where the complaint alleged in detail the sources of the bank's knowledge of the account holder's business and lack of income therefrom. See id. at 445.

1    The complaint includes no facts to support a finding that, prior to or at the time of
2 the Initial Wire, WFB had actual knowledge of Kuntz's scheme to trick S&S into wiring
3 funds to Kuntz's account.  To the extent S&S is asserting WFB obtained actual
4 knowledge of Kuntz's fraudulent scheme after S&S had been tricked, the complaint, as
5 discussed above, likewise lacks facts to support such a conclusion; rather, the complaint,
6 at best, alleges WFB should have become aware of the specific wrongful conduct before
7 it was too late to mitigate the resulting harm.  (See, e.g., Compl. ¶ 43; see also Compl.
8 ¶ 32 (alleging WFB "allow[ed]" Kuntz to transfer funds by wire "without taking even
9 minimal steps to verify the propriety" thereof); Compl. ¶ 118 (alleging WFB "continued to
10 process wire transfers after it became aware of circumstances that suggested that the
11 bank account was being used for fraudulent purposes").)
12    Accordingly, the Fourth Cause of Action is subject to dismissal.
13 **F.  Fifth Cause of Action:  "Unjust Enrichment/Constructive Trust"**
14    In the Fifth Cause of Action, titled "Unjust Enrichment/Constructive Trust," S&S
15 alleges WFB received a "benefit in the form of bank fees for processing the wire
16 transfers" (see Compl. ¶ 122) and that the amounts it received should be "disgorged"
17 (see Compl. ¶ 124).
18    At the outset, the Court notes, and as WFB argues, California does not recognize
19 a cause of action for unjust enrichment.  "Unjust enrichment" itself is "not a cause of
20 action . . . or even a remedy, but rather a general principle, underlying various legal
21 doctrines and remedies"; it is "synonymous with restitution."  See McBride v. Boughton,
22 123 Cal. App. 4th 379, 387 (2004)) (internal quotation and citation omitted).
23 Consequently, the question is whether S&S has sufficiently "plead[ed] a cause of action
24 giving rise to a right to restitution."  See id. at 388.  In that regard, WFB next argues S&S
25 has not alleged facts to support a finding that S&S paid any fees to WFB.
26    In its opposition, S&S clarifies that its claim is based on the theory that WFB
27 "received various fees, and may still retain funds in the account of Kuntz, both of which
28 would be at the expense of S&S (as the source of the funds to pay the fees) and it would

14

1  be unjust for it to retain them, with knowledge of and substantial assistance in the fraud of
2  Kuntz."  (See Pl.'s Opp. at 28:22-24.)  The complaint, however, includes no facts to
3  support a finding that Kuntz used the funds he obtained from S&S to pay wire fees or that
4  a balance remains in Kuntz's account, much less that any such balance is the property of
5  WFB.  Moreover, S&S cites no authority suggesting a claim for unjust enrichment can be
6  brought where there is no contractual or quasi-contractual relationship between the
7  plaintiff and defendant.  See McBride, 123 Cal. App. 4th at 388 (providing examples of
8  claims wherein plaintiff may seek restitution).
9      Accordingly, the Fifth Cause of Action is subject to dismissal.

**G.  Sixth Cause of Action:  "Violation of California Business & Professions Code Section 17200 et seq."**

    In the Sixth Cause of Action, S&S asserts WFB violated § 17200 of the Business & Professions Code, which section prohibits "unfair competition," including "any unlawful, unfair or fraudulent business act or practice."  See Cal. Bus. & Prof. § 17200.  WFB argues S&S has not sufficiently alleged WFB engaged in any such act or practice.

    To the extent the claim is based on an unlawful act or practice, S&S states it is relying on WFB's alleged "violat[ions] [of] the Bank Secrecy Act and related banking regulations" (see Pl.'s Opp. at 27:6-7), as well as WFB's opening accounts "without customer authorization" (see id. at 27:15-16, 27-28).  As discussed above, however, the complaint does not identify the section(s) of the BSA, any regulation promulgated thereunder, or any other law WFB is alleged to have violated, nor has S&S alleged WFB, rather than Kuntz, opened the account on which the instant claims are based.

    Next, to the extent the claim is based on an unfair act or practice, S&S states it is relying on "the same allegations" on which it bases its "unlawful prong" claim (see Pl.'s Opp. at 27:20), and, consequently, for the reasons stated above, such claim likewise fails.

    Lastly, to the extent the claim is based on a fraudulent act or practice and (1) is derivative of the Fourth Cause of Action, the claim fails for the reasons stated above and

15

(2) is based on WFB's alleged fraudulent opening of unauthorized accounts, the claim fails for the reason that S&S has not shown how any such asserted fraudulent act occurred in connection with Kuntz's account.

Accordingly, the Sixth Cause of Action is subject to dismissal.

### H.  Claims Against Wells Fargo & Company

Each of the above-discussed Causes of Action is also asserted against WFC, under the theory that said defendant is the "alter ego" of WFB.  (See Compl. ¶ 12.)

As noted above, WFC has not filed a response to the complaint.  The deficiencies identified above, however, are equally applicable to the claims as asserted against WFC, and, accordingly, the complaint is subject to dismissal as brought against said additional defendant as well.  See Silverton v. Dep't of Treasury, 644 F.2d 1341, 1345 (9th Cir. 1981) (holding, where motion to dismiss complaint is granted as to moving defendant, court may dismiss complaint as asserted against non-moving defendant "in a position similar to that of moving defendant[ ]").

## CONCLUSION

For the reasons stated above, WFB's motion to dismiss is hereby GRANTED, and the complaint is hereby DISMISSED.  If S&S wishes to file an amended complaint for purposes of curing any of the above-referenced deficiencies and/or to add a claim under division 11 of the California Commercial Code, S&S shall file any such First Amended Complaint no later than January 22, 2021.

In light of the above, the Case Management Conference is hereby CONTINUED from January 22, 2021, to April 16, 2021.  A Joint Case Management Statement shall be filed no later than April 9, 2021.

**IT IS SO ORDERED.**

Dated: December 29, 2020

MAXINE M. CHESNEY
United States District Judge